UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEISHA TIGNER, | |
| Plaintiff, | Civil Action No. 12-3915 (SDW)(SCM) |
| v. | **OPINION** |
| JERSEY CITY HOUSING AUTHORITY, | November 13, 2014 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is defendant Jersey City Housing Authority's ("JCHA" or "Defendant") Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's Motion.

**FACTUAL HISTORY**[1]

Plaintiff Keisha Tigner ("Plaintiff") was employed by Defendant from March 2003 to May 2012.[2] (Am. Compl. ¶5.) In 2006, Plaintiff began working in Defendant's Section 8 division as a

---

[1] Plaintiff failed to properly respond to Defendant's Statement of Facts. Under Local Civil Rule 56.1(a), "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1. Here, Plaintiff responded to only 10 out of the 125 paragraphs in Defendant's Statement of Facts. Accordingly, the remainder of Defendant's Statement of Facts are deemed admitted. (*See* Def.'s Reply 1-3.)

[2] The Amended Complaint states that Plaintiff was hired by Defendant in March 2003, but Plaintiff's Statement of Material Facts indicates that Plaintiff was hired in March 2004.

1

Housing Assistant Technician ("HAT").[3] (Def.'s Statement of Material Facts ("Def.'s SOF") ¶11.) As a HAT, Plaintiff fulfilled administrative duties and provided rental assistance to eligible tenants. (*Id.* ¶12.) In this role, she was a member of the Independent Service Workers of America ("ISWA") union. (*Id.* ¶13.)

On September 30, 2008, Geraldine Jones ("Jones"), the Assistant Director of Section 8, showed Plaintiff and another co-worker a sexually explicit picture. (*Id.* ¶¶23-27; Am. Compl. ¶9.) Plaintiff reported the incident to Grace Malley ("Malley"), Director of Human Resources, which led to Jones' two-day suspension and demotion on October 20, 2008. (Def.'s SOF ¶¶29-38.) Plaintiff claims that she was offended by Jones' various comments, including Jones' statements that the HATs are "stupid," "lazy," and "hoochies." (*Id.* ¶43, 46-48.) Plaintiff also claims that Jones would sometimes rub Plaintiff's arms when Jones "wanted to talk" or "be nice." (*Id.* ¶45.)

In early 2008, Plaintiff complained to Human Resources that Melba Riano ("Riano"), who was in charge of processing Section 8 payments for Defendant, harassed Plaintiff and failed to process payments for Plaintiff's cases. (*Id.* ¶¶70-72.) After investigating the matter, Defendant found insufficient support for Plaintiff's complaint against Riano. (*Id.* ¶¶73-74.)

In support of Plaintiff's First Amendment claims, Plaintiff contends that she "publicly criticized" the management of the Section 8 program, including comments about the misapplication of payment to a landlord, the utilization of the Housing Voucher Program, the delay in funding, and an instance where a landlord was using multiple Employer Identification Numbers ("EINs").[4] (*Id.* ¶¶ 76-82.)

---

[3] A HAT is also known as a caseworker. (Def.'s SOF ¶12.)
[4] Plaintiff does not indicate when she made these alleged statements.

In 2011, Maria Maio ("Maio"), Defendant's Executive Director, implemented the following cost-cutting measures: a hiring freeze, furlough days, and a reduction of overtime and office supplies. (*Id.* ¶¶102-03.) Additionally, Defendant responded to budget cuts to the Section 8 program by laying off four HATs between 2011 and 2013, including Plaintiff in 2012. (*Id.* ¶¶103-04.) Defendant's decision to lay off Plaintiff was based on Plaintiff's personnel records and on ISWA's contract with Defendant. (*See id.* ¶¶111-17.)

The ISWA contract provides, in relevant part:

> ISWA agrees that in any future layoff actions, the application of "merit along with seniority," as provided for in Article 24 of the ISWA collective bargaining agreement, will be defined as follows:
>
> "An employee who has had four or more days suspension (or loss of vacation in lieu of suspension) within the last three years will lose seniority rights for the purposes of layoff, demotion in lieu of layoff or recall."

(*Id.* ¶112.) Taking the ISWA contract into account, Malley found that Defendant "was the only HAT with four or more days suspension in the last three years, [so] Plaintiff lost her seniority for purposes of the layoff." (*Id.* ¶¶113-14.) Malley further considered that Plaintiff had a pending charge of "failure to perform job duties," for which a ten-day suspension was recommended. (*Id.* ¶115.)[5] Since Plaintiff's layoff, Defendant has continued to administer layoffs and has not hired additional HATs for Section 8. (*Id.* ¶¶121-23.)

**PROCEDURAL HISTORY**

On May 16, 2012, Plaintiff filed the instant action in the Superior Court of New Jersey, Law Division, Hudson County. (*Id.* ¶1.) On June 26, 2012, Defendant removed the action to the District of New Jersey. (*Id.* ¶2.) On or about January 23, 2013, this Court granted Defendant's

---

[5] Additionally, Defendant contends that Jones was not consulted in the decision to lay off Plaintiff. (*Id.* ¶119.)

Motion to Dismiss the Complaint in part.  (Dkt. Nos. 13-14.)  On February 25, 2013, Plaintiff filed her Amended Complaint, alleging: (1) First Amendment retaliation under 42 U.S.C. §1983; (2) hostile work environment under the New Jersey Law Against Discrimination ("LAD"); and (3) retaliation under the LAD.  (Def.'s SOF ¶4.)

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

4

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

**DISCUSSION**

    **I.**    **First Amendment Retaliation**

To establish a First Amendment retaliation claim, plaintiff bears the initial burden of showing: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Vaticano v. Twp. of Edison*, No. 09-01751, 2010 WL 4628296, at *6 (D.N.J. Nov. 5, 2010), *aff'd*, 514 F. App'x 218 (3d Cir. 2013) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). The burden then shifts to the defendant "to show, by a preponderance of the evidence, 'that the same action would have been taken even in the absence of the protected conduct.'" *Vaticano*, 2010 WL 4628296, at *6 (quoting *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983)).

Under the "constitutionally protected conduct" prong, a public employee's speech is protected when "(1) the employee spoke as a citizen, (2) the statement involved a matter of public

5

concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Vaticano*, 2010 WL 4628296, at *8 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)). Speech involves a matter of public concern "if it can 'be fairly considered as relating to any matter of political, or social, or other concern to the community." *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). In making this determination, the court must "focus on the content, form, and context of the activity in question." *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). After plaintiff makes this showing, the burden shifts to the defendant to show the "allegedly retaliatory action would have been taken absent the protected conduct." *Vaticano*, 2010 WL 4628296, at *8 (quoting *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006)).

Here, Plaintiff alleges that she "publicly criticized" the management of the Section 8 program, including the erroneous payment to a landlord, the utilization of the Housing Voucher Program, the delay in funding, and an instance where a landlord was using multiple EIN numbers. (Am. Compl. ¶¶20-24.) However, every time that Plaintiff complained to Jones, she did so as an employee, with no one else present, in order to further her own cases. (Def's SOF ¶77-83; Tigner Tr. at 196:6-197:22, 198:2-200:24, 201:9-202:25, 203:12-205:18, 206:6-14.) It is undisputed that Plaintiff complained to Jones in her capacity as Defendant's employee—not as a private citizen. (*See id.*) Additionally, in considering the "content, form, and context" of Plaintiff's complaints to Jones—which were communicated solely to Jones and were regarding Plaintiff's own cases—Plaintiff is unable to show that her complaints involved a matter of public concern to the community. *See Green*, 105 F.3d at 885-86. Therefore, Plaintiff fails to demonstrate that she engaged in any constitutionally protected conduct.

6

Even if Plaintiff had engaged in constitutionally protected conduct, there is no causal link between the alleged constitutionally protected conduct (i.e., Plaintiff's "public" criticisms) and the alleged retaliatory action (i.e., Plaintiff's layoff). To establish causation, Plaintiff must prove: "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Vaticano*, 514 F. App'x at 225 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). In affirming this Court's decision in *Vaticano*, the Third Circuit found that the plaintiff failed to prove causation because there was no showing that defendant was even aware that plaintiff engaged in the alleged protected conduct. *See Vaticano*, 514 F. App'x at 225. Similarly, here, there has been no showing of any correlation between Plaintiff's issues with or complaints to Jones and her subsequent layoff years later. (*See* Def.'s SOF ¶¶77, 105-19.) There is no evidence that Jones communicated Plaintiff's complaints to anyone. (*Id.*) Rather, the record reflects that Jones was not involved in the decision-making process to terminate Plaintiff's employment and that Jones had no prior knowledge regarding Plaintiff's layoff. (*Id.* ¶119.)

Significantly, even if Plaintiff could make a prima facie showing of retaliation under the First Amendment, Defendant has carried its burden of showing that Plaintiff would have been laid off regardless of the alleged protected conduct. *See Vaticano*, 2010 WL 4628296, at *8. Defendant responded to budget cuts to the Section 8 program by laying off four HATs between 2011 and 2013, including Plaintiff in 2012. (Def.'s SOF ¶¶103-04.) Defendant's decision to lay off Plaintiff was based on Plaintiff's personnel records and on ISWA's contract with Defendant. (*See id.*) Taking the ISWA contract into account, Malley found that Defendant "was the only HAT with four or more days suspension in the last three years, [so] Plaintiff lost her seniority for purposes of the layoff." (*Id.* ¶¶113-14.) Malley further considered that Plaintiff had a pending charge of

7

"failure to perform job duties," for which a ten-day suspension was recommended. (*Id.* ¶115.) Since Plaintiff's layoff, Defendant has continued to administer layoffs and has not hired additional HATs for Section 8. (*Id.* ¶¶121-23.) Consequently, there is no genuine dispute that Plaintiff would have been laid off regardless of her alleged protected conduct. Thus, Plaintiff's First Amendment claim fails as a matter of law.

## II.     Hostile Work Environment Under the LAD, N.J.S.A. 10:5-1 *et seq*

Plaintiff's hostile work environment claim is essentially an allegation of sexual harassment, which is prohibited under the LAD. *See Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 601 (1993). To establish a prima facie case of hostile work environment due to sexual harassment, Plaintiff must prove that the conduct at issue: "(1) would not have occurred but for [Plaintiff's] gender; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann*, 132 N.J. at 603-04.

Where a plaintiff establishes a prima facie hostile work environment claim, the issue then becomes whether the employer is vicariously liable for the hostile work environment. *See Barroso v. Lidestri Foods, Inc.*, 937 F. Supp. 2d 620, 631-32 (D.N.J. 2013). Vicarious liability should not attach if the employer exercised due care "in acting to prevent a sexually discriminatory hostile work environment. The establishment of an effective anti-sexual harassment workplace policy and complaint mechanism evidences an employer's due care and may provide affirmative protection from vicarious liability." *Id.* at 634. The following considerations are applicable: the employer's "periodic publication of the employer's anti-harassment policy, the presence of an effective and practical grievance process for employees to use, and training for workers, supervisors, and managers concerning how to recognize and eradicate unlawful harassment." *Id.*

at 634-35. Further, "[a]n employer has a clear duty not only to take strong and aggressive measures to prevent invidious harassment, but also to correct and remediate promptly such conduct when it occurs." *Id.* at 634 (quoting *Herman v. Coastal Corp.*, 348 N.J. Super. 1, 25 (App. Div. 2002)).

A two-year statute of limitations period governs the LAD, except where the continuing violation theory applies. *Jackson v. Chubb Corp.*, 45 F. App'x 163, 165 (3d Cir. 2002). To demonstrate a continuing violation, Plaintiff must prove: "(1) that at least one discriminatory or harassing act occurred within the [limitations period]; and (2) that the harassment or discrimination represents a continuing pattern, or more than the occurrence of isolated or sporadic acts of intentional discrimination." *Cortes v. Univ. of Med. and Dentistry of New Jersey*, 391 F. Supp. 2d 298, 307 (D.N.J. 2005).

In this case, Plaintiff was immediately on notice of her claim when Jones showed Plaintiff the sexually explicit picture in 2008 and complained accordingly. Thus, the two-year statute of limitations bars any claim regarding the 2008 picture incident claim, as the continuing violation theory is inapplicable to allegations that arise from a "discrete," isolated instance. *Jackson v. Chubb Corp.*, 45 F. App'x at 165.

As to Plaintiff's other allegations, Plaintiff fails to set forth a prima facie case for hostile work environment. In particular, Plaintiff contends that Jones rubbed her arms, and Plaintiff received "differential treatment from her supervisor(s)" such as "harsher discipline than other similarly situated employees and delays in the processing of payments" for Plaintiff's cases. (Am. Compl. ¶¶9-13, 34-37.) As explained below, these allegations fall short of satisfying any of the required elements for a prima facie claim for hostile work environment because there is no evidence of gender-motivated or pervasive conduct. *See Lehmann*, 132 N.J. at 603-04.

First, Plaintiff fails to establish that Jones' actions toward Plaintiff would not have occurred "but for" Plaintiff's gender. *See Lehmann*, 132 N.J. at 603-04. Instead, the record shows that Jones directed her comments and actions toward all HATs. (*See* Def.'s SOF ¶¶25-27, 41-42.) Because there is no evidence to support any gender-motivated behavior by Jones, Plaintiff's claim cannot be sustained. This Court need not reach the issue of whether Jones' conduct would be considered "severe or pervasive" by a reasonable person so as to create a hostile work environment.[6] *See Lehmann*, 132 N.J. at 603-04.

However, even if Plaintiff could set forth a prima facie case for hostile work environment, Defendant's anti-harassment policy and its adherence to its enforcement shield it from vicarious liability. *See Barroso*, 937 F. Supp. at 634-35. Defendant has an active policy against harassment in the workplace, which includes an anti-retaliation policy, and a system for processing complaints and investigations. (Def.'s SOF ¶¶84-92.) Additionally, Malley, Maio, and Jones testified that Defendant conducts training on discrimination, retaliation and hostile work environment every two to three years, with the most recent training having occurred in 2013. (Maio Tr. at 29:4-24; Malley Tr. at 25:1-9, 26:7; Jones Tr. at 18:4, 24.) Furthermore, as a result of the 2008 picture complaint, Malley conducted an investigation, which led to Jones' two-day suspension and a demotion with a decrease in pay. (Def.'s SOF ¶¶28-38.) Hence, because of Defendant's active anti-harassment policy and related procedures, vicarious liability would not extend to Defendant.

### III.   Retaliation Under the LAD

A prima facie case of retaliation under the LAD requires that Plaintiff show: "(1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that

---

[6] Even so, Plaintiff's lack of support for "severe or pervasive" conduct would further militate against finding that this element is satisfied.

there was a causal connection between the protected activity and the adverse employment action." *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 287 (3d Cir. 2010); *Sanchez v. SunGard Availability Servs. LP*, No. 06-3660, 2009 WL 1312918, at *7 (D.N.J. May 5, 2009). If Plaintiff is able to set out a prima facie case of retaliation, Defendant "must articulate a legitimate, non-discriminatory reason for the employment action." *Jackson*, 45 F. App'x at 166. Then, if Defendant articulates such a reason, the burden shifts back to Plaintiff, who "must submit evidence that that explanation is pretextual-i.e., evidence that would cause a reasonable factfinder to disbelieve [Defendant's] articulated reason, or believe that an invidious discriminatory reason was more likely than not a determinative factor in [Defendant's] action." *Sanchez*, 2009 WL 1312918, at *7.

In support of her retaliation claim, Plaintiff argues that she engaged in protected activity by reporting Jones' "inappropriate and unacceptable behavior, as well as other complaints to management." (Am. Compl. ¶26-27.) However, Plaintiff fails to demonstrate that this alleged protected activity was causally related to her layoff. *See Sanchez*, 362 F. App'x at 287. Even if Plaintiff were able to support this causal link, Defendant has articulated a "legitimate, non-discriminatory reason" for laying off Plaintiff. *Jackson*, 45 F. App'x at 166. Defendant was undergoing budget cuts to the Section 8 program and in response, Maio implemented a hiring freeze, furlough days, and a reduction of overtime and office supplies. (Def.'s SOF ¶¶102-03.) Additionally, Defendant responded to the budget cuts by laying off four HATs between 2011 and 2013, including Plaintiff in 2012. (*Id.* ¶¶103-04.) Defendant's decision to lay off Plaintiff in particular was based on Plaintiff's personnel records and on ISWA's contract, from which Malley concluded that Defendant "was the only HAT with four or more days suspension in the last three years, [so] Plaintiff lost her seniority for purposes of the layoff." (*Id.* ¶¶111-17.) Malley further

11

considered that Plaintiff had a pending charge for "fail[ing] to perform job duties." (*Id.* ¶115.) Therefore, the evidence in the record supports that Defendant had a legitimate reason to discharge Plaintiff.

In light of the foregoing, the burden shifts to Plaintiff to show that Defendant's explanation is pretextual. *Sanchez*, 2009 WL 1312918, at *7. In opposition to the Motion, Plaintiff argues that Defendant's decision to terminate her employment was erroneous, as she did not lose seniority under the ISWA contract, and because Defendant hired three individuals after she was terminated. (Pl.'s Opp. 9-13.) However, the issue is not whether the decision was calculated in error, but instead whether the decision was legitimate and non-discriminatory. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Defendant has articulated a reasonable belief that Plaintiff should have been laid off because she had the least seniority under the ISWA. (*See* Def.'s SOF ¶¶14-22, 112-15.) Further, there is no genuine dispute that, since Plaintiff's layoff, Defendant has continued to administer layoffs and has not hired additional HATs for Section 8. (Def.'s SOF ¶¶121-23.) Thus, Plaintiff has failed to show that the decision to lay her off was for a pretextual purpose other than the budget cuts.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.

s/ Susan D. Wigenton, U.S.D.J.


Orig:        Clerk
cc:          Parties
               Magistrate Judge Steven C. Mannion